[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 12, 2006
THOMAS K. KAHN
CLERK

No. 05-15722
Non-Argument Calendar

_____

D. C. Docket No. 02-02652-CV-CC-1

CELLINI D. PARKER,

                                                    Plaintiff-Appellant,

versus

ATLANTA NEWSPAPERS NAME HOLDING CORPORATION,
COX ENTERPRISES INC.,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 12, 2006)

Before BLACK, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Cellini Parker appeals the district court's grant of summary judgment to defendants Atlanta Newspapers Name Holding Corporation and Cox Enterprises, Inc. on her Title VII sexual harassment claim. The district court held that Parker did not create a genuine issue of material fact as to whether the harassment she suffered was so severe or pervasive that it created a discriminatorily abusive work environment. We reverse the district court's grant of summary judgment and remand for further proceedings.

Cellini Parker is a production worker in the mail room at the defendants' Gwinnett County Printing Plant in Norcross, Georgia. Parker was assigned to work at one of the insert machines which gathers and collates supplements for the Atlanta Journal-Constitution's newspapers. Each machine includes multiple "hoppers" at which production workers feed inserts into the machine. Each insert machine is controlled by two operators who assign production workers, like Parker, to work at particular hoppers. Eric Cannon was one of the operators on the insert machine Parker was assigned to. Therefore, as an operator Cannon had the authority to tell Parker which hopper she would be responsible for, but he did not have the authority to discipline Parker or to fire her.

When Parker was assigned to Cannon's insert machine he told her that "pretty girls don't last on a job like this for long." From that point forward,

2

Cannon began making sexually vulgar and demeaning comments to Parker on a daily basis. Cannon's comments included: "I want to fuck you for your birthday." "When are you going to let me taste you?" "Parker, I know it's good and tight cause you've never had kids." "You always have your legs open as if you want someone's head between them." "You have nice round breasts." "You have some juicy thighs." Parker also alleges that Cannon physically harassed her by rubbing her hands, shoulders and elbows and standing "disturbingly close to her."

Additionally, Parker stated that Cannon treated her more harshly than the other employees assigned to his insert machine. Cannon would routinely assign her to the most difficult hopper on the machine and also require Parker to remain at difficult hopper stations rather than going through the normal rotation which included shifts at the easier positions. It was a part of Cannon's job requirements that she be able to run any hopper on the machine without assistance; however, according to Parker, it was normal practice for employees to assist one another on the most difficult hoppers. Parker asserts that Cannon would not permit other employees to assist her at these positions.

As a result of these incidents Parker brought suit in federal court alleging violations of Title VII and various state law tort claims. The district court granted summary judgment to the defendants on all Parker's claims. Parker appeals the

district court's grant of summary judgment to the defendants on her Title VII claim only.

We review the district court's grant of summary judgment de novo. Key West Harbour Development Corp. v. City of Key West, 987 F.2d 723, 726 (11th Cir. 1996). In so doing, we view the evidence and all factual inferences in the light most favorable to Parker as the nonmoving party to determine whether any genuine issue of material fact exists and whether the defendants are entitled to judgment as a matter of law. Id.

In order to establish a hostile work environment sexual harassment claim under Title VII an employee must show: "(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999). The only elements that the defendants contest are, the fourth and fifth ones, whether the harassment was so severe and pervasive as to alter the terms and conditions of Parker's employment and whether

4

a basis for holding the employer liable exists.[1]  The district court held that the harassment was not sufficiently severe and pervasive and, therefore, did not address the final element.

The fourth element, which the district court did address, requires that harassing conduct be severe or pervasive enough to alter the terms and conditions of employment.  This element has both a subjective and objective component.  Id. at 1246.  The employee must "subjectively perceive" the harassing conduct as severe and pervasive and this perception must be objectively reasonable.  Id.  This Court has identified four factors to aid courts in evaluating the objective reasonableness of an employee's perception that conduct is severe and pervasive

---

[1]The defendants contend that the facts in its "Statement of Undisputed Material Facts" attached to its motion for summary judgment should be deemed admitted by the plaintiffs.  According to the Northern District of Georgia's Local Rule 56.1, a movant for summary judgment must attach a separate statement of material facts as to which the movant contends there is no genuine issue of material fact.  The Rule also requires the respondent to include a response to the movant's statement of undisputed facts.  Each of the movant's facts will be deemed admitted unless the respondent "directly refutes the movant's fact with concise responses supported by specific citations to evidence."  N.D. Ga. Local Rule 56.1.  The defendants argue that because Parker did not file a separate statement of facts in compliance with this court rule, we must accept each of the defendant's facts in the "Statement of Undisputed Material Facts" as true.  Parker did reply to the Statement of Undisputed Material Facts attached to the defendants' first motion for summary judgment and incorporated that reply by reference in her response to the defendants' second motion for summary judgment.  The district court did not discuss Rule 56.1 in its decision, and we likewise will not apply it in the first instance here on appeal.

5

enough to alter the terms and conditions of employment: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

Parker has established a genuine issue of material fact about whether she subjectively perceived the harassment as severe and pervasive enough to create a hostile work environment. Parker stated that Cannon's "comments and actions made me fear coming to work. I was sick and in shock by Cannon's conduct and the lack of management concerns." Because that statement creates a genuine issue of material fact about her subjective perception, the next question we must answer is whether her belief was objectively reasonable. See Mendoza, 195 F.3d at 1246.

The district court held that Parker had not established a genuine issue of fact as to whether the harassment was objectively severe and pervasive because (1) Parker had not shown that Cannon's conduct was physically threatening or humiliating, (2) there was no actual interference with Parker's job performance, and (3) Cannon was not Parker's supervisor and did not have the authority to discipline or terminate her.

Parker claims that she was subject to daily harassment. She alleges that Cannon made sexually vulgar and demeaning statements to her "every single time

6

she was at work." Parker also alleges that Cannon touched her hands, elbows and shoulders a number of times and would stand "disturbingly close to her, nearly pressing his body against hers." The defendants contend that these incidents occurred when Cannon was training Parker. Parker also alleges that when she refused Cannon's advances, he made her work harder than others by assigning her to the most difficult hopper on the insert machine and taking her out of the normal rotation so that she had to remain at that position for long periods of time without anyone to assist her.

Parker has established the objective reasonableness of her perception that she was subjected to severe and pervasive harassment that created a discriminatorily abusive work environment. Under the four factors which we consider to determine this, there is no doubt that the first factor weighs in Parker's favor. The conduct occurred frequently. She testified, and the defendants do not appear to dispute, that Cannon's unwelcome comments were made "every single time she was at work" for a period of several months.

Under the second factor, the offensive and demeaning nature of many of Cannon's comments indicates that the verbal harassment which Parker had to endure was severe. The comments were undeniably sexually explicit and repeatedly referred to Parker's anatomy and Cannon's desire to have sex with her.

It is also significant that Parker was a production worker on the insert machine that Cannon operated. Parker had to work in close proximity to Cannon at whatever hopper he determined that she should run. Parker had nowhere to go where she could escape Cannon's unwelcome attention.

The district court's problem with Parker's claim was the other two factors. It determined that Cannon's conduct was not physically threatening or humiliating and did not actually interfere with Parker's job performance. Parker argues that the incidents in which Cannon touched her on the hands, arms and shoulders and stood too close to her were physically humiliating. She also contends that Cannon interfered with her job performance by treating her more harshly than other employees, assigning her to the most difficult position for hours at a time and not permitting anyone else to assist her.

Parker apparently concedes that the touching and standing too close incidents occurred while Cannon was training her. However, in conjunction with Cannon's comments, we cannot rule out the possibility that these physical incidents were objectively threatening or humiliating. Even if this factor does not ultimately support Parker's claim, we, unlike the district court, do not believe that its absence necessarily indicates that the harassment was not severe and pervasive.

We also disagree with the district court's conclusion that Cannon did not

8

interfere with Parker's job performance. Although Cannon was not Parker's supervisor, he was the operator of the insert machine that Parker was assigned to and had the authority to determine the hopper where Parker would work. Parker has alleged that Cannon would take her out of the normal rotation and force her to work extra hours at the most difficult position. On at least one occasion he instructed another employee not to assist Parker at one of the hoppers. Parker's job duties did require her to be able to operate a hopper without assistance, but that does not mean that Cannon did not interfere with Parker's job performance. Parker alleges that she was treated unfairly because Cannon treated her more harshly than other employees on his machine. The fact that the assignments Cannon gave Parker were technically within the duties of her position does not alone decide the question. If Cannon singled Parker out for harsher treatment than other employees on his machine, that may have affected her job performance. That is an issue that a jury needs to decide.

This case is similar to Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269 (11th Cir. 2002), where we held that the plaintiff had presented enough evidence from which a reasonable jury could find that the harassment he faced was severe and pervasive. Miller involved a race discrimination hostile environment claim; however, the analysis is the same as that for a hostile environment claim based on

sexual harassment. See id. at 1275–76 (citing sexual harassment cases in discussing the elements of the plaintiff's hostile environment racial harassment claim). Miller's co-worker directed ethnic slurs at him three to four times a day. Id. at 1276. As in this case, Miller was subjected to purely verbal, rather than physical, harassment, although we did find that the harassment was "physically threatening" because of the intimidating manner in which many of the slurs were spoken. Id. Similarly, although Parker may not have been subject to physical harassment, some of Cannon's comments, such as telling her "I want to fuck you" reasonably could be perceived as physically threatening.

We think that Parker has presented evidence from which a jury might find that she was subject to a "continuous barrage of sexual harassment" such as we found actionable in Johnson v. Booker T. Washington Broadcasting Service, Inc., 234 F.3d 501, 509 (11th Cir. 2000). Like the Court in Johnson, we distinguish Parker's case from other cases where we have determined that the harassment was not severe and pervasive because a plaintiff was subject to "fewer instances of less objectionable conduct over longer periods of time." See id. (citing Mendoza v. Borden, Inc., 195 F.3d 1238, 1242–43 (11th Cir. 1999), and Gupta v. Fl. Bd. of Regents, 212 F.3d 571, 585 (11th Cir. 2000)). Parker stated that she was subject to Cannon's unwelcome comments on a daily basis, every time she was at work, for a

10

period of several months.  Cannon's statements were offensive and demeaning and were of an overtly sexual nature.  Cf. Gupta, 212 F.3d at 583 (noting that much of alleged harassment was conduct "that no reasonable person would consider to be of a gender-related or sexual nature").  There is no possibility that Cannon's statements were misinterpreted by Parker.

Parker has presented enough evidence to create a genuine issue of material fact as to whether the harassment she faced was sufficiently severe and pervasive to create a hostile working environment.  The district court erred in granting summary judgment to the defendants on that element of Parker's claim.  The district court's order granted summary judgment solely on the fourth element and did not address the fifth element of Parker's claim, which is whether a basis for holding the defendants liable exists.  We think it is appropriate to remand this case to the district court for full consideration of that issue.  We express no opinion on whether a basis for holding the defendants liable exists.

Therefore, the district court's order granting summary judgment to the defendants is REVERSED and the case is REMANDED to that court for further proceedings.

11